UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**KATHERINE J. CANNATELLI**,

        Plaintiff,

v.

**CAROLYN W. COLVIN**,

        Defendant.

Case No. 3:12-cv-01903-KI

OPINION AND ORDER

George J. Wall
1336 East Burnside Street, Suite 130
Portland, OR 97214

    Attorney for Plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

Page 1 - OPINION AND ORDER

Catherine Escobar
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Katherine Cannatelli brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's request for waiver of an overpayment of $32,433.50 in Social Security disability benefits. I affirm the decision of the Commissioner.

## BACKGROUND

Cannatelli received a notice of overpayment of benefits and she requested a waiver. She participated in a personal conference on June 16, 2009, after which the field office denied her request for a waiver. After a timely request for a hearing, Cannatelli, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on December 2, 2010.

On December 22, 2010, the ALJ issued a decision finding that Cannatelli was not entitled to a waiver of the overpayment. The Appeals Council adopted the ALJ's findings, but corrected the months which were overpaid. It held Cannatelli received an overpayment of $32,433.50 for the months of April 2004 through August 2004, November 2004 through January 2005, and April 2005 through October 2007.

## LEGAL STANDARDS

When a claimant receives more disability benefits than she is entitled to, an overpayment has been made and the Social Security Administration is entitled to recover the overpayment. 20 C.F.R. § 404.501. Recovery of the overpayment may be partially or completely waived in certain circumstances. Under the regulations, repayment may be waived if the claimant was without fault and if recovery would defeat the purpose of the Act or be contrary to equity and good conscience. 20 C.F.R. § 404.506. Fault is defined as:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The agency must "consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational or linguistic limitations (including any lack of facility with the English language) the individual has." Id. The claimant has the burden of proving that she was without fault. Anderson v. Sullivan, 914 F.2d 1121, 1122 (9th Cir. 1990).

The court must affirm a refusal to waive repayment if the decision is supported by substantial evidence and the ALJ applied the proper legal standards. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation omitted).

## THE ALJ'S DECISION

The ALJ explained the Commissioner sent Cannatelli a notice of overpayment on November 13, 2007. At the hearing, Cannatelli acknowledged overpayment for the periods before July 2005, but argued she could not be responsible for overpayments after that date. It was that July, when she was hired for full-time work, that she called the agency to report it and the agency contact agreed to put the information in her file. She continued to receive benefit checks, and continued to complete forms periodically sent to her by the agency.

The ALJ found,

> The claimant continued to accept payments for more than two years after she notified the agency of her return to full-time work. She testified that she was a project manager for the Kaiser hospital system and a bookkeeper for nonprofit agencies. She lost jobs due to her employers' budget cuts, not incompetence or impairment-related limitations. The claimant also mentioned that she is very organized and has kept every pay stub for the past several years.
>
> Given the claimant's professional experience in the financial field, her consistent work history since 2003, her plan to return to college, and her testimony about being competent and organized, I find that the claimant reasonably could have been expected to know that these payments were incorrect. Therefore, the claimant is not without fault in continuing to receive overpayments from July 2005 onward.

Tr. 24-25.

The Appeals Council reiterated and adopted these findings.

## DISCUSSION

Cannatelli argues there is nothing in the record supporting a conclusion that the agency informed her she would accrue an overpayment if her earning exceeded a certain level. She testified that she called the agency to report her new job, and the agency contact said, "Thank you for calling and letting us know. I will mark it in the system." Tr. 164. He did not tell her she may accrue

Page 4 - OPINION AND ORDER

overpayments. Until she received the letter in November 2007, Cannatelli had no knowledge she was accruing an overpayment. She testified she did not return the checks because the agency "kept sending me more forms. I filled them out and [they] sent me letters that said, based on our findings your benefits are continuing. And, I had no reason to distrust the government." Tr. 163.

Cannatelli is incorrect in her assertion that nothing in the record suggests she was informed about the possibility of overpayment. In fact, in her own letter to the agency in 2008, she wrote:

> In the summer of 2005 I called the SSA to inform them that I had received a job that would make me ineligible to receive benefits *according to all of the 'returning to work' pamphlets I had received from SSA* in the mail. I spoke with a gentleman and he assured me that benefits would be stopped and that he would make sure the appropriate people were made aware of ineligibility. . . . Nothing was changed and I continued to receive benefits, seemingly legitimately since I had not been told otherwise.

Tr. 66 (emphasis added).

The ALJ's finding that, as an educated, young, professional, competent and organized person, Cannatelli could have been expected to know these payments were incorrect is supported by substantial evidence. See also Chatman v. Astrue, 484 F. App'x 179 (9th Cir. June 15, 2012) (similar circumstances–educated, substitute teacher, capacity to read and understand requirements–constituted substantial evidence; he also had experience with overpayments). The ALJ's conclusion does not contradict any finding that Cannatelli is credible. The ALJ may have believed Cannatelli did not know the payments were in fact incorrect, but she could have been expected to know. The Commissioner's decision is affirmed.

///

///

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this   23rd   day of December, 2013.

                                           /s/ Garr M. King
                                           Garr M. King
                                           United States District Judge